IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

POLYMER TECHNOLOGY SYSTEMS,
INC.,

Plaintiff,

v.

SANZAY CORPORATION, d/b/a
INTEGRATED DIAGNOSTICS GROUP
(IDG),

Defendant.
_____/

CIVIL ACTION NO. _____

JURY TRIAL DEMANDED

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF
AND DEMAND FOR JURY TRIAL**

Plaintiff, Polymer Technology Systems, Inc. ("PTS"), hereby sues Defendant, Sanzay

Corporation, d/b/a Integrated Diagnostics Group (IDG) ("Sanzay"), for damages and injunctive

relief, and alleges as follows:

**NATURE OF THE ACTION**

1.      This is an action for federal unfair competition in violation of the Lanham Act, 15

U.S.C. § 1125(a), and for violation of Florida's Deceptive and Unfair Trade Practices Act,

Florida Statute §§ 501.201- 501.213 ("FDUTPA"), arising out of the false statements of

Defendant Sanzay as to the country of origin and performance range of its competing medical

device for use in measuring cholesterol levels.

**PARTIES**

2.      Plaintiff PTS is a corporation organized under the laws of the State of Indiana and

having its principal place of business at 7736 Zionsville Road, Indianapolis, Indiana 46268.  PTS

1

is in the business of researching, developing, manufacturing, and selling point-of-care diagnostic medical device products for the human healthcare market.

3.      Defendant Sanzay is a corporation organized under the laws of the State of Florida and having its principal place of business at 600 West 21st Street, Hialeah, Florida 33010.  Sanzay is registered in this district for service of process through its registered agent, Maria R. Sanchez, 13140 Coronado Terrace, Miami, Florida 33181.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over PTS' claims pursuant to 28 U.S.C. §§ 1331, 1332 and 1367.

5.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2).

## FACTS

### PTS' CardioChek® Lipid Testing System

6.      PTS is an Indiana company that employs approximately 150 full-time employees in Indianapolis and 60 full-time employees in Silicon Valley, California.  PTS has been a vital part of the Indianapolis economy since 1992 and has been ranked by Inc. magazine as one of the 5,000 fastest growing private companies in America in 2012, 2013, 2014, 2015 and 2016.

7.      PTS manufactures and sells a hand-held, point-of-care analyzer/meter and test strip testing system that tests for total cholesterol, high-density lipoproteins (HDL) and triglycerides with a single drop of blood.

8.      The PTS test strip used in the hand-held testing system is referred to as a "Multi-Analyte Strip" and is the only FDA-approved strip for multiple cholesterol analytes that does not require a laboratory or multiple, uncomfortable finger pricks to produce an adequate blood

sample.  The test results, and both the low-density lipoprotein (LDL) and total cholesterol-to-HDL ratio calculated from the test results, provide for the ready determination of major risk factors for heart disease.

9.      The PTS lipid test strips provide an HDL dynamic measurement range of between 15 – 100.  This measurement range ensures an accurate reading of the patient's cholesterol levels and associated health risks.

10.      The PTS system is branded CardioChek® and is PTS' flagship product.

**The 2016 Mexican Tender**

11.      On or about October 4, 2016, the Mexican government agency Centro Nacional de Programas Preventivos y Control de Enfermedades ("CENAPRECE") publicly put out a tender to international corporations for submission of bids for the supply of lipid testing systems (the "2016 Mexican Tender").

12.      The 2016 Mexican Tender included numerous minimum requirements for acceptable bids.

13.      One of the requirements to successfully bid for the 2016 Mexican Tender was that the lipid testing systems could be imported under the preferential tariff treatment available under certain international trade agreements, such as the North American Free Trade Agreement ("NAFTA") between the United States of America, Mexico, and Canada.  In order for a United States bidder to comply with this requirement, it had to offer a lipid testing system that was manufactured in one of the three NAFTA signatory countries.

14.      Another requirement to successfully bid for the 2016 Mexican Tender was that the lipid testing systems could provide, at a minimum, an HDL dynamic measurement range of between 15 – 100.

15.     On or about October 24, 2016, PTS, through its Mexican distributors, bid on the 2016 Mexican Tender.

16.     If awarded to PTS' Mexican distributors, the 2016 Mexican Tender would have resulted in significant sales of PTS' CardioChek® testing system at a minimum of about $6 million and a maximum of about $12.5 million.

**The Korean Manufactured Veri-Q Testing System**

17.     Korean manufacturer MiCoBioMed Co., Ltd. ("MiCoBioMed") has developed a hand-held, point-of-care analyzer/meter and test strip testing system that tests for total cholesterol, HDL, and triglycerides with multiple drops of blood.

18.     The MiCoBioMed testing system is branded as the Veri-Q Multi System, consisting of VERI-Q Multi ML test strips (the "VERI-Q Strip"), and the VERI-Q Multi handheld analyzer/meter (the "VERI-Q Meter").

19.     According to the MiCoBioMed's product insert, the VERI-Q Strips have an HDL dynamic measurement range of between 20 – 80.

20.     **Sanzay's Improper Importation of the Veri-Q Testing System**

21.     Sanzay was PTS' direct competitor for the 2016 Mexican Tender, and for future, yearly Mexican Tenders.

22.     In November 2016, Sanzay, through its Mexican distributor, was the successful bidder for the 2016 Mexican Tender.

23.     Sanzay, however, does not manufacture lipid testing systems which measure total cholesterol, HDL, and triglycerides in human blood.

24.     Upon information and belief, Sanzay merely imports MiCoBioMed's Korean-made VERI-Q Multi System and relabels/repackages the VERI-Q system to improperly

4

represent that the VERI-Q system is manufactured by Sanzay in the United States of America. See Photograph and analysis comparing labels and product components for Sanzay's VERI-Q System with MiCoBioMed's VERI-Q System, attached hereto as **Exhibit "A"**; Photograph comparing the front and back covers of Sanzay's VERI-Q System User Manual and MiCoBioMed's VERI-Q System User Manual, attached hereto as **Exhibit "B"**.

25.     Upon information and belief, Sanzay succeeded in bidding its product during the 2016 Mexican Tender by further misrepresenting that the VERI-Q Strips have an HDL dynamic measurement range of between 10 – 100, when it fact, the VERI-Q Strips have a much more limited HDL dynamic measurement range no greater than between 20 – 76.

26.     Sanzay's VERI-Q System functions in the same manner as MiCoBioMed's VERI-Q System in that both systems utilize interchangeable memo chips and lipid test strips, operate identically, and have identical screen displays and front button locations.    See Photographs and analysis of MiCoBioMed's VERI-Q Multi next to Sanzay's VERI-Q Multi, attached hereto as **Exhibit "C."**

27.     Upon information and belief, Sanzay has merely made cosmetic changes to MiCoBioMed's VERI-Q Multi System in furtherance of its unlawful scheme to misrepresent both the system's country-of-origin and performance ranges.

28.     While MiCoBioMed has registered with the United States Food and Drug Administration ("FDA") as a manufacturer of various other VERI-Q *glucose* products, it has not registered as a manufacturer of the VERI-Q *lipid* testing system.    See FDA Establishment Registration & Device Listing for MiCoBioMed, attached hereto as **Exhibit "D."**

29.     While Sanzay has registered with the FDA as a Repackager/Relabeler for 139 medical devices, it is not registered as a manufacturer, or repackager/relabeler for the VERI-Q

Multi System lipid testing system.  See FDA Establishment Registration & Device Listing for Sanzay Corporation, attached hereto as **Exhibit "E."**

30.     As a result of Sanzay's misrepresentations to CENAPRECE that (1) it manufactured the VERI-Q Multi System in the United States, and (2) the VERI-Q Multi System has an HDL dynamic measurement range of between 10 – 100, Sanzay's Mexican distributor was awarded a contract with the Mexican government to sell Sanzay's lipid testing system, estimated to be more than $10 million.

31.     But for Sanzay's misrepresentations as to both the VERI-Q Multi System's country of origin and HDL dynamic measurement range, PTS' Mexican distributor would have been awarded this lucrative contract with the Mexican government to sell PTS' CardioChek® lipid testing system.

### COUNT I – Violation of the Lanham Act, 15 U.S.C. § 1125(a)

32.     PTS re-alleges and incorporates by reference the preceding paragraphs 1 through 31 of this Complaint.

33.     Defendant Sanzay has intentionally falsified the medical device labeling and packaging of the VERI-Q Multi System lipid testing system by stating that the system's country of origin is the United States, when in fact the system is manufactured in Korea.

34.     Defendant Sanzay has intentionally falsified the medical device labeling and packaging of the VERI-Q Multi System lipid testing system by stating that the system has an HDL dynamic measurement range of between 10 – 100, when in fact, the system's HDL dynamic measurement range is limited to 20 – 76.

35.     As a result of Sanzay's false promotional statements regarding the VERI-Q Multi System in its distributor's 2016 Mexican Tender bid, Sanzay benefitted from the award of the 2016 Mexican Tender bid at the expense of PTS.

36.     Sanzay's improper conduct violates the Lanham Act, including 15 U.S.C. § 1125(a).

37.     Due to Sanzay's false promotional statements, PTS has suffered damages and will continue to suffer damages in the future.

WHEREFORE, PTS respectfully requests that this Court enter judgment:

a.     Adjudging that Sanzay has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

b.     Preliminarily and permanently enjoining Sanzay, its officers, directors, agents, servants, employees, attorneys, parents, subsidiaries, affiliates or other business entities, managers, and all other persons acting or attempting to act in concert, participation, or privity with Sanzay, and their successors and assigns, from further violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by disseminating or causing to be disseminated the false statements challenged in this Complaint through any promotional statements.

c.     Awarding PTS Sanzay's profits and PTS' damages and trebling the same pursuant to 15 U.S.C. § 1117(a) for Sanzay's violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and its pre- and post-judgment interest and costs.

d.     Determining this case to be an exceptional case and awarding PTS attorneys' fees pursuant to 15 U.S.C. § 1117(a) for Sanzay's violations of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

e.      Awarding PTS such other and further relief as PTS may be entitled to, and as the Court may deem just and proper.

### COUNT II – Violation of Florida's Deceptive and Unfair Trade Practices Act

38.     PTS re-alleges and incorporates by reference the preceding paragraphs 1 through 31 of this Complaint.

39.      Defendant Sanzay has intentionally falsified the medical device labeling and packaging of the VERI-Q Multi System lipid testing system by stating that the system's country of origin is the United States, when in fact the system is manufactured in Korea.

40.     Defendant Sanzay has intentionally falsified the medical device labeling and packaging of the VERI-Q Multi System lipid testing system by stating that the system has an HDL dynamic measurement range of between 10 – 100, when in fact, the system's HDL dynamic measurement range is limited to 20 – 76.

41.     As a result of Sanzay's false promotional statements regarding the VERI-Q Multi System in its distributor's 2016 Mexican Tender bid, Sanzay benefitted from the award of the 2016 Mexican Tender bid at the expense of PTS.

42.     Sanzay's improper conduct violates Florida's Deceptive and Unfair Trade Practices Act, including Florida Statutes § 501.204(1).

WHEREFORE, PTS respectfully requests that this Court enter judgment:

a.      Adjudging that Sanzay has violated Florida's Deceptive and Unfair Trade Practices Act, including Florida Statutes § 501.204(1).

b.      Preliminarily and permanently enjoining Sanzay, its officers, directors, agents, servants, employees, attorneys, parents, subsidiaries, affiliates or other business entities, managers, and all other persons acting or attempting to act in concert, participation, or privity

with Sanzay, and their successors and assigns, from further violation of Florida's Deceptive and Unfair Trade Practices Act, including Florida Statutes § 501.204(1), by disseminating or causing to be disseminated the false statements challenged in this Complaint through any promotional statements.

c.      Awarding PTS its actual damages for Sanzay's violations of Florida's Deceptive and Unfair Trade Practices Act, including Florida Statutes § 501.204(1), and its pre- and post-judgment interest and costs.

d.      Awarding PTS attorneys' fees pursuant to Florida Statute § 501.2105.

e.      Awarding PTS such other and further relief as PTS may be entitled to, and as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

PTS demands trial by jury of all issues so triable.

Dated:  September 18, 2017.

Respectfully submitted,

**AKERMAN LLP**
*Attorneys for Plaintiff Polymer Technology Systems, Inc.*
Three Brickell City Centre
98 Southeast Seventh Street
Miami, Florida 33131
Telephone: (305) 374-5600
Fax: (305) 374-5095

*/s/ Joseph L. Rebak*
Joseph L. Rebak
Florida Bar No. 308668
joseph.rebak@akerman.com
Lorayne Perez
Florida Bar No. 85265
lorayne.perez@akerman.com

#42138930